HONORABLE BRIAN A. TSUCHIDA
Noting Date: October 23, 2020
NO ORAL ARGUMENT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SPENCER YOUNG,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF SEATTLE, JENNY DURKAN, Mayor, LORENA GONZALEZ, LISA HERBOLD, DEBORA JUAREZ, ANDREW J. LEWIS, TAMMY J. MORALES, TERESA MOSQUEDA, ALEX PEDERSEN, KSHAMA SAWANT, DAN STRAUSS, Seattle City Council Members, in their official capacities,<br><br>    Defendants. | No. 2:20-cv-00979-BAT<br><br>MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C)<br><br>Noting Date: October 23, 2020<br>NO ORAL ARGUMENT |

## I.    INTRODUCTION AND RELIEF REQUESTED

Plaintiff *pro se* Spencer Young filed suit seeking declaratory relief "to invalidate the Emergency Civil Order" issued by the City of Seattle prohibiting weapons in a discrete area of the City of Seattle, during an active riot, pursuant to the City's emergency powers. Complaint at 1. Specifically, Plaintiff claims that "City restrictions that deny this fundamental right violate the Second Amendment"; "the order issued by Defendant fails to specify this condition [SMC

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED.
R. CIV. P. 12(C) - 1
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

10.02.020(9) authorizes the Mayor to restrict possession of firearms "which is carried or possessed with intent to use the same to cause [bodily harm]"] and therefore the order "acts in excess of law"; and that the Emergency Order and the authorizing legislation SMC 10.02.020 "authorizing a Mayor to restrict sale/possession/transfer of firearms" is preempted by state law; and finally, that "language of SMC 10.02.020 is in direct conflict with Article I, section 24 of the State Constitution." Complaint at 6.

Defendant City[1] reads these claims to be an as applied challenge to the Emergency Order as well as a facial challenge to SMC 10.02.020(9), based on the Second Amendment, Article I, Section 24 of the Washington State Constitution, and state preemption under RCW 9.41 290 and 300. Plaintiff's claims fail for a host of reasons and should be dismissed with prejudice. First, Plaintiff's claim is moot. Second, Plaintiff does not have standing to challenge SMC 10.02.020(9) as this ordinance was never applied against him. Third, the Second Amendment and Article I, Section 24 of the Washington State Constitution are not unlimited and must give way to the City's emergency police powers in some circumstances. And finally, the state preemption applies to ongoing laws and ordinances, not to emergency actions taken to preserve peace and restore order in a riot.

## II.   STATEMENT OF FACTS

On May 30, 2020, the Mayor of Seattle issued an order prohibiting the possession of weapons, "including, but not limited to, rocks, bottles, pipes, bats, clubs, chains, sharpened signs, shields, gas, road flares, torches, paint balls, light bulbs, any incendiary devices, pry-bars, skateboards, balloons filled with liquid, dimensional lumber with a dimension greater than ½

---

[1] All other defendants were previously dismissed by joint motion.  Dkt. No. 12.

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 2
(2:20-cv-00979-BAT)

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

inch, or any other objects which can be used for infliction of bodily harm or damage to property." Complaint, ¶18; Exhibit A, Section 1A.

The reasons supporting the Emergency Order are contained in Emergency Proclamation referenced by the Civil Emergency Order, and include:

> **WHEREAS,** in the evening of May 29, 2020, unpermitted demonstrations were facilitated by the Seattle Police Department, but resulted in property damage to approximately 40 businesses in the downtown core and Capitol Hill, vandalism of several police cars and Seattle Police Headquarters, assaults on officers by rocks, bottles, metal cans, fireworks, and other projectiles; and

> **WHEREAS,** during the unpermitted demonstrations during the evening of May 29, 2020 seven individuals were arrested for crimes including Malicious Mischief, Assault, and Resisting Arrest; and

> **WHEREAS**, in other cities, including Atlanta, Phoenix, New York, Houston, San Jose, Los Angeles, Dallas, Portland, and Minneapolis, demonstrations over the killing of George Floyd have turned violent and led to property destruction, injuries to demonstrators, significant uses of force by police, and injuries to both demonstrators and police officers; and

> **WHEREAS**, in Detroit, MI, on May 28, 2020, a 19-year old man was killed by gunfire at a related demonstration; and

> **WHEREAS**, during the demonstrations in Seattle on May 30, 2020, Seattle Police Officers were assaulted with rocks, bottles, and other projectiles, Seattle Police Patrol cars were set on fire, a Seattle Police rifle stolen from a police vehicle and fired, hundreds of demonstrators marched down I5, shutting it down for vehicular traffic, Molotov cocktails were made and objects thrown at Seattle Police HQ that smelled of accelerant, followed by flares; and

> **WHEREAS**, many businesses and personal [sic] were targeted for significant property damage; and

> **WHEREAS**, the presence of large numbers in a limited space combined with the clear and present, and escalating, threat of violence, presents an unacceptably high risk of serious injury to innocent people including lawful protesters and police, as well as significant property damage; and

> **WHEREAS**, these events are rapidly evolving and police responses are escalating even during the drafting of this order and he ability of the police to effectively control the situation is rapidly being compromised;

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 3
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

*See* Emergency Proclamation at http://clerk.seattle.gov/~CFS/CF_321702.pdf, 1-2 (selected paragraphs)[2].

The Emergency Order incorporates the justifications set forth in the Emergency Proclamation and adds one additional justification in support: "reports are incoming about a man with a rifle on the Yesler overpass." Complaint, Exhibit A.

The Emergency Order applied to "a restricted areas of the City "bounded on the East by 15th Avenue East, on the South by I90, on the West by Elliott Bay, and on the North by Mercer Street." Complaint, ¶18; Exhibit A, Section 1A. Complaint, Exhibit A. Plaintiff alleges that he lives within these boundaries.  Complaint, ¶ 20.

The order further instructed Seattle Police to "confiscate any weapon identified above or any other implement reasonably perceived or believed to be capable of being used as a weapon found within these boundaries" and that "any individual who violated this order shall be subject to arrest."  Complaint, ¶18; Exhibit A, Section 1A. Plaintiff does not allege that he had any interactions with police, that he was arrested, or that he had any weapon confiscated. *See* Complaint, *generally*.

The Emergency Order was issued pursuant to SMC 10.02.020(A)(15), which authorizes the Mayor to proclaim "such other orders as are imminently necessary for the protecting of life and property" and take extraordinary measures to protect the public peace, safety and welfare. Complaint, Exhibit A, at 1; SMC 10.02.020(A)(15).  Complaint, Attachment A.

---

[2] Although Plaintiff did not physically attach the Emergency Proclamation underlying the Emergency Order which was physically attached to the complaint, the Emergency Order specifically incorporates the facts and circumstances of the Emergency Proclamation and may be considered by this Court under the "'incorporation by reference' doctrine, which permits [the Court] to take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."' *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). In the alternative, the City requests the Court to take judicial notice of the Emergency Proclamation pursuant to Fed. R. Evid. 201.

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 4
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

In contrast, Seattle Municipal Code 10.02.020(9) authorizes the Mayor to issue certain orders, including: "An order prohibiting the carrying or possession of a firearm or any instrument which is capable of producing bodily harm and which is carried or possessed with intent to use the same to cause such harm." SMC 10.02.020(9).

SMC 10.02.020(9) was not referenced in the Emergency Order. Complaint, Exhibit A.

The Emergency Proclamation and Emergency Order were rescinded by Mayoral Proclamation Terminating Civil Emergency on June 18, 2020.  See Exhibit B, Mayoral Proclamation Terminating Civil Emergency.[3]

### III. ISSUES

1. Whether Plaintiff's challenge to the Emergency Order is moot as the order was rescinded on June 18, 2020?

2. Whether the City's exercise of emergency powers infringed upon the Second Amendment?

3. Whether the City's exercise of emergency powers infringed upon the Article I, Section 24 of the Washington State Constitution?

4. Whether the City's exercise of emergency powers infringed on the Washington State preemption regarding firearms under RCW 9.41 290 and 300?

5. Whether Plaintiff has standing to facially challenge an ordinance, SMC 10.02.020(9) that was never applied to him?

---

[3] The City requests this Court take judicial notice of this fact, especially as the Court itself is within the area impacted by the Emergency Order and therefore this is "generally known within the trial court's territorial jurisdiction." Fed. R. Evid. 201(2). Publicly available at:
http://clerk.seattle.gov/search/results?s6=(emergency+(decl$+or+order+or+proc$))%5BTI%5D&l=200&Sect1=IMAGE&Sect2=THESON&Sect3=PLURON&Sect4=AND&Sect5=CFCF1&Sect6=HITOFF&d=CFCF&p=1&u=%2Fsearch%2Fclerk-files&r=6&f=G.

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 5
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

# IV. ARGUMENT AND AUTHORITIES

### A. Motion to Dismiss Standard

When a complaint fails to state a claim on which relief can be granted, the defendant may move for judgement on the pleadings. Fed. R. Civ. P. 12(c). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must indicate more than mere speculation of a right to relief. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 500 U.S. at 570). Although *Iqbal* establishes the standard for deciding a Rule 12(b)(6) motion, Rule 12(c) is "functionally identical" to Rule 12(b)(6) and "the same standard of review" applies to motions brought under either rule. *Luken v. Christensen Grp. Inc.*, 247 F. Supp. 3d 1158, 1161 (W.D. Wash. 2017) (*citing Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047 (9th Cir. 2011). In ruling on a motion to dismiss, the court must accept as true all well-pleaded allegations of material fact and construe them in the light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031–32 (9th Cir.2008). However, the court does not have to accept any of plaintiff's legal conclusions. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Also, the court is not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Manzarek,* at 1031.

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 6
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

**B.    Plaintiff's challenge to the May 30, 2020 Emergency Order is moot as that Order has been rescinded.**

An action is moot when the issues presented are no longer live, and the mootness inquiry asks whether there is anything left for the court to do. *Western Oil & Gas Ass'n v. Sonoma Cnty.,* *905 F.2d 1287, 1290* (9th Cir. 1990). Here, where plaintiff only sought declaratory relief that the May 30, 2020, Emergency Order violated his rights, and where that order has been rescinded, there is no live issue for the Court to decide.

The Ninth Circuit has specifically recognized that governmental action taken to repeal legislation was more likely to render a case moot than private action.

> However, we treat the voluntary cessation of challenged conduct by government officials "with more solicitude ... than similar action by private parties." Am. Cargo Transp., Inc. v. United States, 625 F.3d 1176, 1180 (9th Cir. 2010) (internal quotation marks omitted) ("[W]e presume the government is acting in good faith."). For this reason, the repeal, amendment, or expiration of challenged legislation is generally enough to render a case moot and appropriate for dismissal.

*Board of Trustees of Glazing Health and Welfare Trust v. Chambers,* 941 F.3d 1195, 1198 (9th Cir. 2019).

Under the present circumstances, the Emergency Order is presumed moot. While a party challenging the presumption of mootness need not show that enactment of the same or similar legislation is a "virtual certainty," the reasonable expectation of enactment cannot be based on speculation. *Id*. Here, no such claim is made, even speculative.

Plaintiff may respond that the limited temporal nature of an Emergency Order qualifies for the exception to mootness as capable of repetition, but evading review. A dispute qualifies for that exception only "if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *United States v. Sanchez-Gomez*, 138 S. Ct.

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 7
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

1532, 1540, 200 L. Ed. 2d 792 (2018)(citing *Turner v. Rogers*, 564 U.S. 431, 439–440, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011)). There is no reasonable expectation that this Plaintiff will be subject to another Emergency Order limiting weapons or that if such an order were drafted, its language and effect would be similar to the order at issue. In fact, as the plain language of the order does not mention firearms (a conspicuous omission) and does not reference SMC 10.02.020(9), the ordinance that empowers the Mayor to restrict firearms during an emergency, it is highly likely that any future emergency order restricting firearms would be drafted very differently.[4] There is no reasonable expectation that the boundaries of any future order would be similar. As discussed throughout this brief, the exercise of these particular emergency powers requires, by definition, extraordinary circumstances that may or may not come to pass and are specifically drafted to address the circumstances that arise. Therefore, as there is no present controversy relating to the rescinded Emergency Order and no reasonable expectation that another order shall issue, all this entire case should be dismissed as moot.

**C.     The City of Seattle has broad emergency powers.**

To situate the legal context of this matter, it is necessary to understand the role of emergency powers. Emergency power is an exercise of a sovereignty's police power. *CLEAN v. State*, 130 Wash.2d 782, 928 P.2d 1054 (1996). The police power of the state is expansive, allowing a sovereign to protect the public safety and in cases of emergency, exercise of police power can override individual rights. *See Bowes v. City of Aberdeen*, 58 Wn. 535, 541 (1910);

---

[4] On its face, the Executive Order does not encompass firearms. It restricts the specific types of weapons and tools being used against officers and property in the area of the riot. It should also be noted that the order was drafted in the middle of tense and rapidly evolving events, as stated in the whereas clauses, and may not have been a perfect model of clarity. As such, the applicability of this Emergency Order to firearms is subject to debate; nonetheless, *as Plaintiff alleges that the Emergency Order would have impacted his legal ability to carry firearms in his Complaint while the Order was in effect, that fact is assumed as true for purposes of this motion*.

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 8
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

*Cougar Business Association v. State of Washington*, 97 Wn.2d 466, 477 (1982) ("exercise of emergency police power is lawful when: reasonably necessary in the interest of public health, safety, morals, and the general welfare, substantially related to the evil sought to be cured, and directed at a reasonable class of persons").

Both Federal and State Courts have upheld the exercise of police power in derogation of statutory and constitutional rights to the extent reasonably necessary in times of emergency. The necessity for such delegation is readily apparent:

> In times of natural catastrophe or civil disorder, immediate and decisive action by some component of state government is essential. The legislative police power can of course be exercised to deal with crises affecting the public health, safety, and welfare. In practice, however, the ravages of nature and the exigencies of rioting, labor strife, and civil rights emergencies usually necessitate prompt governmental response. Since the executive is inherently better able than the legislature to provide this immediate response, state chief executives have frequently been given substantial discretionary authority in the form of emergency powers to deal with anticipated crises.

*Cougar Business Association*, 97 Wn.2d 466, 477 (Footnote omitted.) (*quoting* Comment, Constitutional and Statutory Bases of Governors' Emergency Powers, 64 Mich. L. Rev. 290, 290 (1956)).

Similarly, "[c]ontrol of civil disorders that may threaten the very existence of the State is certainly within the police power of government." *Stotland v. Pennsylvania*, 398 U.S. 916, 920 (1970). And importantly, "[t]he invocation of emergency powers necessarily restricts activities that would normally be constitutionally protected." *United States v. Chalk*, 441 F.2d 1277, 1280 (1971). However, while constitutional activities may be restricted during an emergency, there is no wholesale suspension of the United States Constitution in such circumstances and courts must consider the facts and circumstances around the exercise of that authority. *Sterling v. Constantin*, 287 U.S. 378, 398, 53 S. Ct. 190, 195, 77 L. Ed. 375 (1932)(" When there is a substantial showing

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 9
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

that the exertion of [emergency] state power has overridden private rights secured by that Constitution, the subject is necessarily one for judicial inquiry in an appropriate proceeding directed against the individuals charged with the transgression.").In Washington, the entire police power of the state is vested in municipal corporations of the first class. *See Shepard v. City of Seattle*, 59 Wn. 363, 372 (1910) (*citing Smith v. Spokane,* 55 Wn. 219 (1909)); *City of Seattle v. Goldsmith*, 73 Wn. 54, 58 (1913) (police power of state is delegated to first class cities); *Brennan v. City of Seattle*, 151 Wn. 665, 668 (1929) (local police power of first class cities is same as state, except as restricted by legislative enactment); *Bungalow Amusement Co. v. City of Seattle*, 148 Wn. 485 (1928).

Finally, of note, as stated in *Stone v. Mississippi*, "[m]any attempts have been made in this court and elsewhere to define the police power, but never with entire success. It is always easier to determine whether a particular case comes within the general scope of the power, than to give an abstract definition of the power itself which will be in all respects accurate." 101 U.S. 814, 818, 25 L. Ed. 1079 (1879).  This case does not present a novel circumstance and the Emergency Order clearly fell within recognized police powers, is lawful under the Second Amendment and Article 1, Section 24 of the Washington State Constitution, and not subject to preemption by the State.

**D.    The Emergency Order Did Not Run Afoul of the Second Amendment or Article I, Section 24 of the Washington State Constitution.**

Both the federal and state constitutions have significant, but not unlimited, protections for the possession of firearms.  The Second Amendment states "[a] well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed." Article I , Section 24 - Right to Bear Arms, of the Washington State Constitution reads "[t]he right of the individual citizen to bear arms in defense of himself, or the state, shall not be

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 10
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain or employ an armed body of men."

### A. The Emergency Order Easily Withstands Intermediate Scrutiny Under the Second Amendment Analysis.

In 2008, that the United States Supreme Court specifically held that there was an *individual* right to bear arms under the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) ("we find that [the Second Amendment and interpreting texts] guarantee the individual right to possess and carry weapons in case of confrontation"). Shortly thereafter, the Court held that the Second Amendment applies to the states (and municipalities) through the Fourteenth Amendment. *See McDonald v. City of Chicago*, 561 U.S. 742, 130 S. Ct. 3020 (2010). However, the right to bear arms is not absolute. Notably, the Supreme Court and Ninth Circuit have explicitly held that government bodies can impose reasonable restrictions on the right to bear arms, such as regulations restricting who may carry firearms and where people may do so. *Heller*, 554 U.S. at 626 (identifying "laws forbidding the carrying of firearms in sensitive places such as school and government buildings" as presumptively lawful); *Peruta*, 742 F.3d at 1178 ("*regulation* of the right to bear arms is not only legitimate but quite appropriate") (emphasis in original); *Nordyke v. King*, 681 F.3d 1041, 1045-46 (9th Cir. 2012) (en banc) (collecting cases).

When considering a Second Amendment challenge to government action, courts in the Ninth Circuit apply a two-step inquiry: (1) whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, whether it meets an intermediate level of scrutiny. *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013)("We believe this two-step inquiry reflects the Supreme Court's holding in Heller that, while the Second Amendment protects an individual right to keep and bear arms, the scope of that right is not unlimited.")

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 11
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

Although the rescinded Emergency Order at issue does not address firearms, as previously noted, the City assumes the order encompasses firearms for purposes of this motion. As such, while reserving its right to revisit this issue in future pleading, the City does not dispute that the Emergency Order, as interpreted by Plaintiff, would have burdened his rights under the Second Amendment. As such, the first prong of the analysis is met. Therefore, turning to the second prong, the City submits that the Emergency Order easily meets the test under intermediate scrutiny, which requires (1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective. *Chovan*, 735 F.3d at 1139.

As set forth in the Emergency Proclamation, the events of May 30, 2020, were rapidly evolving and posed an extreme risk to public safety. The events included assaults on Seattle Police Officers with rocks, bottles, and other projectiles, burning of Seattle Police Patrol cars, theft of a Seattle Police rifle, Molotov cocktails were made and objects thrown at Seattle Police HQ that smelled of accelerant, followed by flares (in an apparent attempt to burn police officers). As set forth in the Emergency Proclamation, the violence was rapidly increasing and the City was losing control of the situation. Additionally, at the time the Emergency Order was issued, there were reports of a man with a rifle on the Yesler overpass. Complaint, Exhibit A. Therefore, issuing an Emergency Order directed at limiting the very tools and weapons being used to attack officers, vehicles, and buildings, and generally threatening public safety, was clearly related to an important government interest as "[n]o one could seriously dispute that the government has a significant interest in maintaining public order; indeed this is a core duty that the government owes its citizens." *Menotti v. City of Seattle*, 409 F.3d 1113, 1131 (9th Cir. 2005). Similarly, the order created a limited zone encompassing downtown Seattle in which to restrict the very weapons at

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 12
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

issue in declaring the emergency. In *Menotti*, the Ninth Circuit recognized that "the size of the restricted zone was justified by the difficulty of protecting world leaders in an environment in which a small group of violent protestors were determined to cause chaos and to disrupt the conference proceedings midst tens of thousands of non-violent protestors." 409 F.3d 1113 at 1134. The Ninth Circuit also stated "[w]e decline Appellants' invitation to interpret the above cases as defining conclusively the appropriate scope of "narrow tailoring" in the context of establishing a buffer zone on protest activity." *Id.* at 1133. The same considerations should be applied here – the boundaries encompassed the downtown core where the violence, using weapons, was occurring. As such, the Emergency Order did not violate the Second Amendment.

### B. The Emergency Ordinance Does Not Violate Article I, §24 of the Washington State Constitution.

Like the Second Amendment, the Washington State Constitution, Art. 1, §24, does not grant a right to bear arms that is absolute. It is subject to reasonable regulation by the state's police powers. *State v. Rupe*, 101 Wash.2d 664, 707 n. 9, 683 P.2d 571 (1984). Regulations enacted by a municipality in the exercise of its police powers must meet the judicial test of reasonableness. This test requires that the regulation be "reasonably necessary to protect public safety or welfare, and substantially related to legitimate ends sought." *State v. Jorgenson*, 179 Wash. 2d 145, 156, 312 P.3d 960, 964 (2013)(recognizing that the Washington State Constitution offers different and greater protection to the right to bear arms than the Second Amendment and should be independently analyzed).

The Emergency Ordinance at issue was clearly reasonably necessary to protect public safety and welfare as set forth in the Emergency Proclamation. Arson, assault, criminal mischief, and other property destruction posed imminent threats to public safety and these acts were being

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 13
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

carried out using the tools and weapons of the types enumerated in the order and proclamation. And similar to the Second Amendment analysis, the order was substantially related to the specific, legitimate need to curtail weapons in a particular zone during a riot. The order was limited to the area of unrest and, because it was tied to a specific emergency, limited in time.

Based on the wide discretion given to municipalities under their emergency police powers to deal with situations like this, imposition of a temporary restriction on weapons in the area of civil unrest is certainly reasonably necessary to protect public safety and substantially related to those needs.  As such, Plaintiff's claim should be dismissed as a matter of law.

**E. The Emergency Order is Not Subject to Preemption Under RCW 9.41.290.**

RCW 9.41.290 states "the State of Washington herby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including the registration, listening, possession, purchase, sale, acquisition, discharge, and transportation, or any other element relating to firearms or parts thereof, including ammunition and reloaded components." Moreover, the statute specifically limits municipalities, only granting them the ability to pass laws or ordinances relating to firearms that are specifically authorized by state law.  The Emergency Order is exempt from this statutory preemption because an Emergency Order is not a "law or ordinance" subject to preemption and the City of Seattle simply must have the ability to take necessary emergency action to protect the welfare of its residents.

An Emergency Order is not a law or ordinance by definition. Instead, it is an emergency executive action taken to preserve public safety in extraordinary circumstances. Article V, Section 2 of the Seattle City Charter specifically grants the Mayor the authority to declare an emergency and assume command of the police force during that emergency. Similarly, the Charter requires that the Mayor "maintain peace and order in the City." Seattle City Charter, Art.

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 14
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

V, §2. As such, the need to assume extraordinary powers in extraordinary circumstances is built into the foundation of the City of Seattle. Allowing for statutory preemption of the City of Seattle's ability to provide for the safety of its residents during an emergency leads to absurd results. Here, there was rioting in the streets, officers, cars, and buildings were being attacked by thrown incendiary devices, and people were getting hurt in the mayhem. An SPD firearm was stolen and there were reports of a man on the Yesler overpass. At that moment, under those circumstances, the City was not "regulating" firearms, it was seizing control of a large crime scene and locking it down for the safety of all involved by prohibiting weapons in that area.

The Washington Supreme Court has held that the legislative purpose of RCW 9.41 is to "advance uniformity in criminal firearms regulation." *Watson v. City of Seattle*, 189 Wash. 2d 149, 173, 401 P.3d 1, 13 (2017) (*citing Cherry v. Municipality of Metropolitan Seattle,* 116 Wash.2d 794, 801, 808 P.2d 746 (1991). Exercising emergency power, limited in scope and duration, is simply not a threat to uniformity in criminal firearms regulation and is not inconsistent with the intent of RCW 9.41. Now that the emergency is over, the uniformity of firearms regulation is unchanged.

In *Chan v. City of Seattle*, the Court of Appeals, Division One, rejected the City's argument that "RCW 9.41.290 does not apply because the statute precludes a municipality only from adopting 'laws and ordinances' regulating the possession of firearms, and not a rule or policy." 164 Wash. App. 549, 566, 265 P.3d 169, 178 (2011). That holding, finding a rule akin to a law or ordinance, does not control here. The whole purpose of emergency police power is to act outside of the constraints of the legislative process. *Cougar Business Association*, 97 Wn.2d 466, 477 ("The legislative police power can of course be exercised to deal with crises affecting the public health, safety, and welfare. In practice, however, the ravages of nature and the

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 15
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

exigencies of rioting, labor strife, and civil rights emergencies usually necessitate prompt governmental response").

As such, the firearm preemption of RCW 9.41 does not apply to restriction of weapons during a declared state of emergency and Plaintiff's claims should be dismissed.

**F.      Plaintiff Lacks Standing to Bring a Facial Challenge Against SMC 10.02.020(9), as that Ordinance Was Never Invoked**

Justiciability is a threshold question that must be resolved in every federal proceeding. *City of Los Angeles v. Kern*, 581 F.3d 841, 845 (9th Cir. 2009). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding on the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). The role of the federal courts "is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (*en banc*). Courts should assume the absence of jurisdiction unless the record affirmatively shows otherwise. *See San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996).

Plaintiff bears the burden of establishing standing. *Clapper*, 568 U.S. at 408 (2013). "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of *the particular claims* asserted." *Oregon Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1233 (9th Cir. 2017) (quotation omitted). To establish standing, a plaintiff must show that (1) it has suffered an injury-in-fact; (2) that injury is fairly traceable to the challenged law; and, (3) the relief requested would redress that injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "[S]tanding is determined as of

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 16
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

the commencement of litigation." *Yamada*, 786 F.3d at 1203 (alterations omitted).

To satisfy the "injury-in-fact requirement," a plaintiff must show that she has suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotations and citations omitted). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way. For an injury to be concrete, it must actually exist; in other words, it is real, and not abstract." *Clark v. City of Seattle*, 899 F.3d 802, 809 (9th Cir. 2018) (quotations & citations omitted). Allegations of future injury are only sufficient where "the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Clapper*, 568 U.S. 414 n.5).

Here, Plaintiff alleges deprivation "of his right to keep and bear arms…as travel with a firearm from his residence would similarly be illegal and subject plaintiff to possibility of arrest." Complaint, ¶35. As set forth above, none of Plaintiff's rights were violated, but assuming, *arguendo*, that he did sustain some injury, SMC 10.02.020(9) could not have been the cause as it was not invoked in this case. Therefore, Plaintiff's facial challenge to that statute fails for a lack of standing.

## V.  CONCLUSION

For the foregoing reasons, the City of Seattle respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

DATED this 30th day of September, 2020.

> PETER S. HOLMES
> Seattle City Attorney
>
> By:   *s/ Brian G. Maxey*
>         Brian G. Maxey, WSBA #33279
>         Assistant City Attorney

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 17
(2:20-cv-00979-BAT)

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

E-mail: brian.maxey@seattle.gov

Seattle City Attorney's Office
701 5th Avenue, Suite 2050
Seattle, WA 98104
Tel: (206) 233.2158

*Attorney for Defendant, City of Seattle*

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 18
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200

**CERTIFICATE OF SERVICE**

I certify that on the 30th day of September, 2020, I caused a true and correct copy of this document to be served via the CM/ECF e-filing system:

| Spencer Young<br>2801 Western Avenue Apt. 1019<br>Seattle, WA 98121<br>**[Pro se Plaintiff]** | ( x )  Via Email<br>spencer.young@spyoung.com |
|---|---|

        <u>*s/ Jennifer Litfin*</u>
        Jennifer Litfin, Paralegal

MOTION FOR JUDGMENT ON THE PLEADING PURSUANT TO FED. R. CIV. P. 12(C) - 19
(2:20-cv-00979-BAT)

**PETER S. HOLMES**
Seattle City Attorney
701 Fifth Avenue, Ste. 2050
Seattle, WA 98104
(206) 684-8200