UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SPENCER PHILLIP YOUNG,

Plaintiff,

v.

CITY OF SEATTLE,

Defendant.

CASE NO. 2:20-cv-00979-BAT

**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant City of Seattle[1] moves for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c). Dkt. 14. Plaintiff Spencer Phillip Young, pro se, seeks a declaratory judgment invalidating the Emergency Civil Order (the "Emergency Order") issued by the City of Seattle on May 30, 2020 and rescinded on June 18, 2020. The Emergency Order was issued pursuant to Seattle Municipal Code ("SMC") 10.02.020 and prohibited weapons in a specific area in the City of Seattle. Dkt. 1-1. Plaintiff asserts that the Emergency Order violates the Second Amendment and Article I, section 24 of the State Constitution; was not specifically conditioned to the requirements of SMC 10.02.020(9); and is preempted by state law. Dkt. 1-1, p. 6.

Defendant City argues that Plaintiff's claims should be dismissed with prejudice because they are moot (the Emergency Order was rescinded), the City's exercise of emergency powers did not infringe upon the federal or state constitutions, and the Emergency Order is not subject to

---

[1] All other defendants were previously dismissed by joint motion. Dkt. No. 12.

ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS - 1

1  preemption. Defendant City further contends that Plaintiff lacks standing to facially challenge

2  SMC 10.02.020(9). Dkt. 14. In reply, Plaintiff clarifies that he is not challenging any provision

3  of the SMC. Dkt. 17, pp. 5-6. It is also undisputed that Defendant City did not rely on SMC

4  10.02.020(9) as authority to issue the Emergency Order. However, Plaintiff raises for the first

5  time in his reply, a request for injunctive relief. *Id.*

6      The Court concludes that Defendant City's motion should be granted because Plaintiff

7  does not meet the Article III requirements because his claims are moot, and the Emergency

8  Order was neither unconstitutional nor subject to preemption. The Court further finds that any

9  request by Plaintiff to amend his complaint to cite the appropriate SMC provision or to seek

10 injunctive relief is futile and would therefore, be denied.

11                              STATEMENT OF FACTS

12     On May 30, 2020, the Mayor of Seattle issued an order prohibiting the possession of

13 weapons, "including, but not limited to, rocks, bottles, pipes, bats, clubs, chains, sharpened signs,

14 shields, gas, road flares, torches, paint balls, light bulbs, any incendiary devices, pry-bars,

15 skateboards, balloons filled with liquid, dimensional lumber with a dimension greater than ½

16 inch, or any other objects which can be used for infliction of bodily harm or damage to

17 property." Dkt. 1-1, ¶18; Exhibit A, Section 1A. The reasons supporting the Emergency Order

18 are contained in the Emergency Proclamation:

19          WHEREAS, in the evening of May 29, 2020, unpermitted demonstrations were
            facilitated by the Seattle Police Department, but resulted in property damage to
20          approximately 40 businesses in the downtown core and Capitol Hill, vandalism of
            several police cars and Seattle Police Headquarters, assaults on officers by rocks,
21          bottles, metal cans, fireworks, and other projectiles; and

22          WHEREAS, during the unpermitted demonstrations during the evening of May
            29, 2020 seven individuals were arrested for crimes including Malicious Mischief,
23          Assault, and Resisting Arrest; and

ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS - 2

WHEREAS, in other cities, including Atlanta, Phoenix, New York, Houston, San Jose, Los Angeles, Dallas, Portland, and Minneapolis, demonstrations over the killing of George Floyd have turned violent and led to property destruction, injuries to demonstrators, significant uses of force by police, and injuries to both demonstrators and police officers; and

WHEREAS, in Detroit, MI, on May 28, 2020, a 19-year old man was killed by gunfire at a related demonstration; and

WHEREAS, during the demonstrations in Seattle on May 30, 2020, Seattle Police Officers were assaulted with rocks, bottles, and other projectiles, Seattle Police Patrol cars were set on fire, a Seattle Police rifle stolen from a police vehicle and fired, hundreds of demonstrators marched down I5, shutting it down for vehicular traffic, Molotov cocktails were made and objects thrown at Seattle Police HQ that smelled of accelerant, followed by flares; and

WHEREAS, many businesses and personal [sic] were targeted for significant property damage; and

WHEREAS, the presence of large numbers in a limited space combined with the clear and present, and escalating, threat of violence, presents an unacceptably high risk of serious injury to innocent people including lawful protesters and police, as well as significant property damage; and

WHEREAS, these events are rapidly evolving and police responses are escalating even during the drafting of this order and the ability of the police to effectively control the situation is rapidly being compromised.

*See* Emergency Proclamation at http://clerk.seattle.gov/~CFS/CF_321702.pdf, 1-2 (selected

paragraphs).[2] The Emergency Order incorporates the justifications set forth in the Emergency

Proclamation and adds the additional justification: "reports are incoming about a man with a rifle

on the Yesler overpass." Dkt. 1-1, Exhibit A.

---

[2] The Court takes judicial notice of the Emergency Proclamation as it is specifically incorporated in the Emergency Order. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (Under the "incorporation by reference" doctrine, a court may take into account, documents "whose contents are alleged in a complaint [but are not physically attached to the complaint] and whose authenticity no party questions."); *see also* Fed. R. Evid. 201.

ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS - 3

1        The Emergency Order applied to "a restricted area of the City "bounded on the East by

2  15th Avenue East, on the South by I90, on the West by Elliott Bay, and on the North by Mercer

3  Street." Dkt. 1-1, ¶18; Exhibit A, Section 1A. Complaint, Exhibit A. Plaintiff alleges that he

4  lives within these boundaries. Dkt. 1-1, ¶ 20.

5        The Emergency Order further instructed Seattle Police to "confiscate any weapon

6  identified above or any other implement reasonably perceived or believed to be capable of being

7  used as a weapon found within these boundaries" and that "any individual who violated this

8  order shall be subject to arrest." Dkt. 1-1, ¶18; Exhibit A, Section 1A.

9        Plaintiff does not allege that he had any interactions with police, that he was arrested, or

10  that he had any weapon confiscated. *See* Dkt. 1-1 Complaint, generally.

11        The Emergency Order was issued pursuant to SMC 10.02.020(A)(15), which authorizes

12  the Mayor to proclaim "such other orders as are imminently necessary for the protecting of life

13  and property" and take extraordinary measures to protect the public peace, safety and welfare.

14  Dkt. 1-1, Exhibit A, at 1; SMC 10.02.020(A)(15), Complaint, Attachment A.

15        Although Plaintiff claims that the Emergency Order was not specifically conditioned as

16  required by SMC 10.02.020(9), that code provision is not referenced in the Emergency Order.

17  Dkt. 1-1, Complaint, Exhibit A. SMC 10.02.020(9) authorizes the Mayor to issue certain orders,

18  including: "An order prohibiting the carrying or possession of a firearm or any instrument which

19  is capable of producing bodily harm and which is carried or possessed with intent to use the

20  same to cause such harm."

21        The Emergency Proclamation and Emergency Order were rescinded by Mayoral

22  Proclamation Terminating Civil Emergency on June 18, 2020. The Court takes judicial notice of

23

the fact that the Emergency Order was rescinded.[3] The Court is within the area impacted by the

Emergency Order and its rescission is "generally known within the trial court's territorial

jurisdiction." Fed. R. Evid. 201(2).

STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal

theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v.*

*Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege

facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662,

129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A claim has "facial plausibility" when the party

seeking relief "pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id*. Although the Court must accept as true

the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will

not defeat a Rule 12(c) motion. *Vasquez v. L. A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007);

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do. Factual allegations

must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations and footnotes omitted).

Although *Iqbal* establishes the standard for deciding a Rule 12(b)(6) motion, Rule 12(c)

is "functionally identical" to Rule 12(b)(6) and "the same standard of review" applies to motions

---

[3]*See:* http://clerk.seattle.gov/search/results?s6=(emergency+(decl$+or+order+or+proc$)) %5BTI%5D&l=200&Sect1=IMAGE&Sect2=THESON&Sect3=PLURON&Sect4=AND&Sect5 =CFCF1&Sect6=HITOFF&d=CFCF&p=1&u=%2Fsearch%2Fclerk-files&r=6&f=G

ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS - 5

brought under either rule. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc*., 637 F.3d 1047 (9th Cir. 2011), citing *Dworkin v. Hustler Magazine Inc*., 867 F.2d 1188, 1192 (9th Cir. 1989).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv*., 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

DISCUSSION

A.    <u>Mootness</u>

An action is moot when the issues presented are no longer live, and the mootness inquiry asks whether there is anything left for the court to do. *Western Oil & Gas Ass'n v. Sonoma Cnty*., 905 F.2d 1287, 1290 (9th Cir. 1990). The repeal, amendment, or expiration of challenged legislation is generally enough to render a case moot and appropriate for dismissal. *See Board of Trustees of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) (citing *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) (internal quotation marks omitted) ("[W]e presume the government is acting in good faith.").

Because the Emergency Order was rescinded on June 18, 2020, it is presumed moot. Plaintiff argues that the presumption of mootness is overcome as the Emergency Order falls with the capable-of-repetition-yet-evading-review exception. Dkt. 13, pp. 2-3. A dispute qualifies for the "capable of repetition" exception only "if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation

that the same complaining party will be subjected to the same action again." *Turner v. Rogers*,

564 U.S. 431, 439–440, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011) (alterations and internal

quotation marks omitted). As the Emergency Order was in effect for less than eighteen days, the

first prong of this test is satisfied. The second prong is not.

Plaintiff alleges that the Emergency Order deprived him "of his right to keep and bear

arms….as travel with a firearm from his residence would similarly be illegal and subject plaintiff

to possibility of arrest." Dkt. 1-1, Complaint, ¶35. There is no dispute that the Emergency Order

was issued pursuant to SMC 10.02.020(A)(15) (which authorizes the Mayor to proclaim "such

other orders as are imminently necessary for the protecting of life and property" and take

extraordinary measures to protect the public peace, safety and welfare), and *not* SMC

10.02.020(9) (which authorizes the Mayor to issue certain orders, including: "An order

prohibiting the carrying or possession of a firearm or any instrument which is capable of

producing bodily harm and which is carried or possessed with intent to use the same to cause

such harm."). However, for purposes of this motion, the Court assumes that Plaintiff's ability to

carry firearms was impacted during the time the Emergency Order was in effect.

Nevertheless, the Emergency Order was drafted during tense and rapidly evolving events

and restricted specific types of weapons and tools that had been or were being used against

officers and property in a specific area of the city. It is undisputed that these events posed an

extreme risk to public safety. Hundreds of demonstrators were marching, causing a traffic shut-

down on I-5; Seattle Police Officers were being assaulted with rocks, bottles, Molotov cocktails,

accelerant, and flares; and businesses and personal property were being damaged. As the

Emergency Order was being drafted, the violence was rapidly increasing, the City was losing

control of the situation, and the City was receiving reports of a man armed with a rifle on the

ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS - 7

1    Yesler overpass. Dkt. 1-1, Exhibit A. It is speculative to suggest that these same circumstances

2    will occur again.

3            The exercise of emergency power outlined in SMC 10.02.020(A)(15) specifically

4    requires extraordinary circumstances and a response specifically drafted to address the

5    circumstances that arise. There is no reasonable expectation that Plaintiff will be subject to

6    another such emergency order or if such an order were drafted, its language, scope, and effect

7    would be similar. As there is no present controversy relating to the rescinded Executive Order

8    and no reasonable expectation that Plaintiff will be subjected to the same action, the Court finds

9    that this case is moot.

10   B.      Constitutional Claims

11           The "invocation of emergency powers necessarily restricts activities that would normally

12   be constitutionally protected." *United States v. Chalk*, 441 F.2d 1277, 1280 (1971). The police

13   power of the state is expansive, allowing a sovereign to protect the public safety and in cases of

14   emergency, exercise of police power can override individual rights. *See Bowes v. City of*

15   *Aberdeen*, 58 Wn. 535, 541 (1910); *Cougar Business Association v. State of Washington*, 97

16   Wn.2d 466, 477 (1982) (*overruled in part on other grounds by Chong Yim v. City of Seattle*, 194

17   Wash.2d 682, 451 P.3d 694 (2019)) (the "exercise of emergency police power is lawful when:

18   reasonably necessary in the interest of public health, safety, morals, and the general welfare,

19   substantially related to the evil sought to be cured, and directed at a reasonable class of

20   persons").

21           While constitutional activities may be restricted during an emergency, there is no

22   wholesale suspension of the United States Constitution in such circumstances and courts must

23   consider the facts and circumstances around the exercise of that authority. *Sterling v. Constantin*,

ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS - 8

287 U.S. 378, 398, 53 S. Ct. 190, 195, 77 L. Ed. 375 (1932).

Both the federal and state constitutions have significant, but not unlimited, protections for the possession of firearms. The Second Amendment states "[a] well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed." Article I, Section 24 - Right to Bear Arms, of the Washington State Constitution reads "[t]he right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain or employ an armed body of men."

    1.   <u>Second Amendment</u>

There is an individual right to bear arms under the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) ("we find that [the Second Amendment and interpreting texts] guarantee the individual right to possess and carry weapons in case of confrontation"). The Second Amendment applies to the states (and municipalities) through the Fourteenth Amendment. *See McDonald v. City of Chica*go, 561 U.S. 742, 130 S. Ct. 3020 (2010). The right to bear arms is not absolute and governmental bodies can impose reasonable restrictions on the right to bear arms, such as regulations restricting who may carry firearms and where people may do so. *Heller*, 554 U.S. at 626 (identifying "laws forbidding the carrying of firearms in sensitive places such as school and government buildings" as presumptively lawful); *Nordyke v. King*, 681 F.3d 1041, 1045-46 (9th Cir. 2012) (en banc) (collecting cases).

When considering a Second Amendment challenge to government action, courts in the Ninth Circuit apply a two-step inquiry: (1) whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, whether it meets an intermediate level of scrutiny. *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013) ("We believe this two-

step inquiry reflects the Supreme Court's holding in *Heller* that, while the Second Amendment protects an individual right to keep and bear arms, the scope of that right is not unlimited.")

The first prong of the analysis is met as Defendant City does not dispute, for purposes of this motion only, that the Emergency Order would have burdened Plaintiff's rights under the Second Amendment. The second prong of the intermediate scrutiny analysis requires (1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective. *Chovan*, 735 F.3d at 1139 (challenged law placed a substantial burden on the appellant's right to bear arms but did not implicate the core Second Amendment right "of law-abiding, responsible citizens to use arms in defense of hearth and home") (quoting *D.C. v. Heller*, 554 U.S. 570, 635 (2008)).

Here, it cannot be seriously disputed that the Defendant City's stated objective was significant, substantial, and important. As stated in the Emergency Proclamation, the events of May 30, 2020 were rapidly evolving and posed an extreme risk to public safety. Police officers were being assaulted with rocks, bottles, and other projectiles; police vehicles were being burned; a police rifle was stolen; Molotov cocktails and other objects were thrown at police that smelled of accelerant and were followed by flares; reports were received of a man with a rifle on the Yesler overpass; hundreds of protestors had forced the shutdown of traffic on the interstate; and, the violence was increasing and the City was losing control of the situation.

Therefore, issuing an Emergency Order directed at limiting the very tools and weapons being used to attack officers, vehicles, and buildings, and generally threatening public safety, was clearly related to an important government interest. As noted by the Ninth Circuit, "[n]o one could seriously dispute that the government has a significant interest in maintaining public order; indeed, this is a core duty that the government owes its citizens." *Menotti v. City of Seattle*, 409

F.3d 1113, 1131 (9th Cir. 2005).

Moreover, the Emergency Order was reasonably tailored to this objective because it was limited geographically, *i.e.*, to the downtown area of Seattle where the violence, using weapons, was occurring. *See Menotti,* 409 F.3d 1113 at 1134 ("the size of the restricted zone was justified by the difficulty of protecting world leaders in an environment in which a small group of violent protestors were determined to cause chaos and to disrupt the conference proceedings midst tens of thousands of non-violent protestors.") In addition to its narrow geographic scope, the Emergency Order was narrowly tailored in time to serve the City's undisputed interest in maintaining public order. Less than three weeks after it was issued, and once the daily violence subsided, the City rescinded the Emergency Order by Mayoral Proclamation.

Because the Emergency Order was a geographically and time limited restriction on the right to carry the type of tools and weapons being used by protesters during unpermitted demonstrations, it did not pose an unreasonable restriction on the right to bear arms.

2.      Article I, §24 of the Washington State Constitution

Like the Second Amendment, the Washington State Constitution, Art. 1, §24, does not grant a right to bear arms that is absolute – rather, the right is subject to reasonable regulation by the state's police powers. *State v. Rupe*, 101 Wash.2d 664, 707 n. 9, 683 P.2d 571 (1984). Regulations enacted by a municipality in the exercise of its police powers must meet the judicial test of reasonableness. The police power of the state is expansive, allowing a sovereign to protect the public safety and in cases of emergency, exercise of police power can override individual rights. *See Bowes v. City of Aberdeen*, 58 Wn. 535, 541 (1910); *Cougar Business Association v. State of Washington*, 97 Wn.2d 466, 477 (1982) ("exercise of emergency police power is lawful when: reasonably necessary in the interest of public health, safety, morals, and the general

ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS - 11

1    welfare, substantially related to the evil sought to be cured, and directed at a reasonable class of

2    persons"); *State v. Jorgenson*, 179 Wash. 2d 145, 156, 312 P.3d 960, 964 (2013).

3            Based on the wide discretion given to municipalities under their emergency police

4    powers to deal with situations like the one facing the City on May 30, 2020 (and for several days

5    before and after), imposition of a temporary restriction, limited in both time and geographic

6    scope, on weapons in an area of civil unrest, was reasonably necessary to protect public safety,

7    substantially related to those needs, and did not pose an unreasonable restriction on the right to

8    bear arms protected by Article I, §24.

9    C.      Preemption Under RCW 9.41.290

10           Plaintiff argues that the Emergency Order is preempted by RCW 9.41.290. Defendant

11   City argues that the Emergency Order is exempt from this statutory preemption because it is not

12   a "law or ordinance" subject to preemption and the City of Seattle must have the ability to take

13   necessary emergency action to protect the welfare of its residents.

14           A state statute preempts an ordinance if the statute occupies the field or if the statute and

15   the ordinance irreconcilably conflict. *See Brown v. City of Yakima*, 116 Wash.2d 556, 559, 807

16   P.2d 353 (1991); *Lawson v. City of Pasco*, 168 Wash.2d 675, 679, 230 P.3d 1038 (2010) ("[A]

17   state statute preempts an ordinance on the same subject if the statute occupies the field, leaving

18   no room for concurrent jurisdiction, or if a conflict exists such that the statute and the ordinance

19   may not be harmonized.").

20           Field preemption occurs when there is express legislative intent to occupy the entire field,

21   or when such intent is necessarily implied. *Brown*, 116 Wash.2d at 560, 807 P.2d 353.

22   Legislative intent may be implied from the statute's purpose and factual circumstances. *See HJS*

23   *Dev., Inc. v. Pierce County*, 148 Wash.2d 451, 477, 61 P.3d 1141 (2003). Conflict preemption

ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS - 12

occurs when "an ordinance permits what state law forbids or forbids what state law permits."

*Lawson*, 168 Wash.2d at 682, 230 P.3d 1038. An ordinance is constitutionally invalid when it

"directly and irreconcilably conflicts with the statute." *Brown*, 116 Wash.2d at 561, 807 P.2d

353. However, if the statute and ordinance may be read in harmony, no conflict will be found.

*Lawson*, 168 Wash.2d at 682, 230 P.3d 1038.

The Legislature included clear preemption language in chapter 9.41 RCW:

> The state of Washington hereby fully occupies and preempts the entire field of firearms regulation within the boundaries of the state, including the registration, licensing, possession, purchase, sale, acquisition, transfer, discharge, and transportation of firearms.... *Cities, towns, and counties or other municipalities may enact only those laws and ordinances relating to firearms that are specifically authorized by state law*.

RCW 9.41.290 (emphasis added).

According to the Washington Supreme Court, the "reasonable conclusion is that RCW

9.41.290 was enacted to reform that situation in which counties, cities, and towns could each

enact conflicting local criminal codes regulating the general public's possession of firearms."

*Cherry v. Municipality of Metropolitan Seattle*, 116 Wash.2d 794, 801, 808 P.2d 746 (1991) (en

banc) (the authority of public employers to prohibit their employees from carrying firearms and

any other weapons while on duty or at the workplace, was not preempted by RCW 9.41.290).

Thus, the legislative purpose of RCW 9.41 is to "advance uniformity in criminal firearms

regulation." *Watson v. City of Seattle*, 189 Wash. 2d 149, 173, 401 P.3d 1, 13 (2017) (citing

*Cherry*, 808 P.2d at 749.

The Washington Supreme Court also cautions that "[s]tatutes should be construed to

effect their purpose and courts should avoid unlikely, strained, or absurd results in arriving at an

interpretation. *Cherry,* 808 P.2d at 750 (citing *State v. Stannard*, 109 Wash.2d 29, 36, 742 P.2d

ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS - 13

1244 (1987)). Thus, in *Cherry,* the court held that interpreting RCW 9.41.290 along the "extreme lines proposed by Cherry would result in consequences unintended by the Legislature" as the preemption clause is not "intended to prohibit reasonable work rules regarding possession of weapons in the public workplace." *Id.*

This Court similarly concludes that the preemption clause is not intended to prohibit an Emergency Order narrowly tailored to protect the public during a dangerous demonstration. The Emergency Order is not a "conflicting local criminal code regulating the general public's possession of firearms," but was an emergency executive action taken to preserve public safety in extraordinary circumstances. The Seattle City Charter specifically grants the Mayor the authority to declare an emergency, assume command of the police force, and maintain peace and order in the City. *See* Seattle City Charter, Art. V, § 2.

There is simply no basis to conclude that the Emergency Order, which was rescinded as soon as the violence began to subside, is a "conflicting local criminal code regulating the general public's possession of firearms." The Emergency Order, which was limited in scope and duration, did not pose a threat to uniformity in criminal firearms regulation and is not inconsistent with the intent of RCW 9.41.

D.    Standing to Challenge SMC 10.02.020(9)

In its motion, Defendant City construed Plaintiff's Complaint as asserting a facial challenge to the validity of SMC 10.02.020(A)(9), which authorizes the Mayor to issue emergency orders "prohibiting the carrying or possession of a firearm or any instrument which is capable of producing bodily harm . . . ." In his Complaint, Plaintiff asserts that the language in 10.02.020(A)(9) "is in direct conflict with Article I, section 24 of the State Constitution," *see* Dkt. 1-1, p. 6, which guarantees that "[t]he right of the individual citizen to bear arms in defense

ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS - 14

1   of himself, or the state, shall not be impaired." However, as previously noted, the City did not

2   rely on RCW 10.02.020(A)(9) for the authority to issue the Emergency Order and there is no

3   reason to believe that this provision could have been applied to Plaintiff or will be applied in the

4   future. Thus, Plaintiff lacks standing to raise a facial challenge to RCW 10.020.020(A)(9)

5   because he has not suffered an injury-in-fact, fairly traceable to the challenged law, that the

6   requested relief would redress. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

7          In his opposition brief, Plaintiff clarifies that he is not asking the Court to strike down

8   any provision of the Seattle Municipal Code, but that he "seeks declaratory relief declaring the

9   City's Order unlawful and *injunctive relief to prevent the city from taking such action again*."

10  Dkt. 17, pp. 5-6 (emphasis added). He further states that the relief requested "does not

11  necessarily require invalidation of any particular municipal code" and that "[w]hether it was

12  SMC 10.02.020(9) or SMC 10.02.020(A)(15) that was applied to Plaintiff should be relatively

13  immaterial." *Id*., p. 6 (footnote omitted). Plaintiff also requests leave to amend his complaint if

14  his failure to cite to the appropriate code provision renders his complaint defective. *Id.* The Court

15  addresses these issues in turn.

16  E.     Amendment

17         As a general matter, courts should freely grant leave to amend a pleading when justice so

18  requires. Fed. R. Civ. P. 15(a)(2). This policy is applied with "extreme liberality," *Eminence*

19  *Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003), and in the Ninth Circuit, a pro

20  se litigant must be given leave to amend before dismissal "unless it is absolutely clear that the

21  deficiencies of the complaint could not be cured by amendment." *Karim-Panahi v. Los Angeles*

22  *Police Dept*., 839 F.2d 621, 623 (9th Cir. 1988). Nonetheless, leave "is not to be granted

23  automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). In determining

ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS - 15

whether to grant leave under Rule 15(a), a court should consider the following factors: (1) delay; (2) bad faith; (3) futility of amendment; and (4) prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

### 1.   Failure to Cite Code Provision

Plaintiff's failure to cite to the appropriate code provision relied on by the City as authority to issue the Emergency Order is immaterial as the Court assumed, for purposes of the motion at hand, that the Emergency Order did impact Plaintiff's ability to carry firearms. Nevertheless, the Court also concluded that the Emergency Order did not violate Plaintiff's constitutional rights. Accordingly, granting leave to amend to allow Plaintiff to cite to the appropriate code provision would be futile and denied.

### 2.   Request for Injunctive Relief

In his opposition, Plaintiff raises for the first time, a request for "injunctive relief to prevent the city from taking such action again."[4] The Court concludes that leave to amend would be futile because Plaintiff cannot show he is entitled to a permanent injunction.

A permanent injunction may issue only if a plaintiff is able to demonstrate that: (1) he has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExhange, LLC*, 547 U.S. 388, 391 (2006). Mere allegations of past violations do not meet the standard for granting injunctive relief. "The

---

[4] In contrast, in his Complaint, Plaintiff sought "declaratory relief to invalidate the Emergency Civil Order …" and "to invalidate Seattle Municipal Codes that authorize the Mayor to prohibit constitutionally protected activities." Dkt. 1-1, p. 1.

ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS - 16

purpose of an injunction is to prevent future violations," and the moving party must demonstrate "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).

As previously discussed, the Emergency Order was a tailored response to specific circumstances, which did not violate Plaintiff's constitutional rights, and there is no cognizable danger of recurrent circumstances. It is undisputed and established by the record before the Court that the Emergency Order was narrow in scope, time, and geography, and was issued in response to the escalating events of violence as outlined in the Proclamation of Civil Emergency. This fact renders the likelihood of future harm entirely speculative.

Generally, the public interest and balance of equities favor preventing the violation of a party's constitutional rights. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Here, however, Plaintiff has not shown that Defendant City's Emergency Order violated his constitutional rights. Plaintiff does not dispute that the City of Seattle possesses police power or that it has a public welfare interest in preventing the type of behavior referenced in the Emergency Order. It would not be in the public's interest if the Court in this case were to issue a permanent injunction broadly prohibiting the City of Seattle from assessing and addressing future threats to public safety through its police powers. Thus, any proposed amendment to Plaintiff's complaint to include a claim for permanent injunctive relief is futile and would be denied.

<u>CONCLUSION</u>

Plaintiff does not meet the Article III requirements to bring this suit as his claims are moot. Additionally, the Emergency Order passes constitutional scrutiny because it was necessary

1   to address substantial threats to public safety and was narrowly tailored in time and geographic

2   scope to address the specific emergency. Moreover, the Emergency Order is not preempted by

3   RCW 9.41.290, and it was not a "conflicting local criminal code regulating the general public's

4   possession of firearms," but an emergency executive action taken to preserve public safety in

5   extraordinary circumstances.

6         Accordingly, it is **ORDERED** that Defendant City's motion for judgment on the

7   pleadings (Dkt.14) is **granted**; Plaintiff's **complaint is dismissed with prejudice**.

8         DATED this 16th day of November, 2020.

9

10

11   _____

12   BRIAN A. TSUCHIDA
     Chief United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

ORDER GRANTING DEFENDANT'S
MOTION FOR JUDGMENT ON THE
PLEADINGS - 18